UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **BILLY PUCKETT** | ) |
| | ) |
| | ) 5:16-CV-05909 |
| | ) |
| **V.** | ) |
| | ) |
| | ) |
| | ) |
| **OCWEN LOAN SERVICING, LLC** | ) |

### ORDER

On November 14, 2016 came the parties, by counsel, all for a hearing on Plaintiff's *Motion for In Camera Review of 117 Redactions from Discovery Materials Produced by Defendant* (Document No. 27.) and Plaintiff's *Motion to Compel Production of Ocwen's Financial Statement and Memorandum in Support*.[1] (Document No. 29.) Appearing for Plaintiff were Ralph Young, Esq. and Jed Nolan, Esq., and for Defendant, Massie Cooper, Esq. After hearing the arguments of counsel, the pleadings filed in support of same, and having reviewed the pertinent legal authorities, the Court **FINDS** as follows:

### Preliminary Matters

During the hearing, counsel for the parties admitted that they had not been able to meet and confer on these discovery disputes pursuant to Local Rule 37.1, accordingly, the Court allowed counsel time to give them a chance to see what matters might be resolved. As a result, the parties reached an agreement **only** with regard to Plaintiff's *Motion to Compel Production of Ocwen's Financial Statement and Memorandum in Support* (Document No. 29.) where

---

[1] Defendant filed cross-Motions for Protective Order to prohibit disclosure of materials allegedly protected by the attorney-work product doctrine and attorney-client privilege as well as to stay discovery with regard to Plaintiff's Request for Production of Documents No. 7 which asked for Defendant's most recent financial statement. (Document No. 37.)

Defendant agreed to produce same under protective order, which was entered at the close of the hearing. (Document No. 43.) Plaintiff's *Motion* (Document No. 29.) is therefore **DENIED** as **MOOT**, and Defendant's *Motion for Protective Order* (Document No. 37.) is **DENIED IN PART** as **MOOT** to the extent that it requested stay of discovery of Defendant's most recent financial statement.

## Background

This civil action concerns claims involving real property situate in Mercer County, West Virginia including invasion of privacy, trespass on the case, slander of title, intentional or reckless infliction of emotional distress, and conversion when Defendant allegedly seized possession of Plaintiff's home to initiate foreclosure proceedings pursuant to a Deed of Trust which was actually secured by another tract of land adjacent to Plaintiff's property. The discovery dispute pertains to certain requests for documents that had been produced in an earlier civil proceeding in State Court: *April Puckett v. Ocwen Loan Servicing, LLC*, Circuit Court of Mercer County, West Virginia, Civil Action Number 14-C-94-DS. In that case, Plaintiff's wife sued Defendant herein arising from the same facts; the parties settled the matter prior to the instant proceeding.

Plaintiff contends that numerous redactions based on Defendant's citing "attorney-client communications", "attorney work product", and other entries "prepared in anticipation of litigation" produced pursuant to discovery requests in this proceeding are unfounded because Defendant previously produced this material in un-redacted form in the previous State civil action, and therefore waived the privilege. (Document No. 27.) Plaintiff further argues that these recent redactions appear to be Defendant's attempt to conceal when it became aware that it had no interest against Plaintiff's title. Plaintiff provided two Activity Logs, one produced during the

State case, the other produced in the instant case, which compares and contrasts the redacted and un-redacted portions contained in the documents.

Defendant responds that it properly redacted information that is privileged and that Plaintiff is not entitled to view information or communications produced by counsel. (Document No. 39.) Further, Defendant points out that the majority of the redactions pertain to status updates between foreclosure counsel and Defendant as to the status of the foreclosure which is clearly protected information, moreover, Plaintiff failed to show the crime-fraud exception applies to the asserted privilege.

## **Relevant Law**

Pursuant to Rule 501 of the Federal Rules of Evidence, in civil proceedings state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. Therefore, West Virginia law applies in determining the scope of the attorney-client privilege; communications are protected under this privilege only when:

> (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential.

See, State v. Burton, 163 W. Va. 40, 254 S.E.2d 129 (W. Va. 1979).

The Fourth Circuit has adopted the "classic test" for determining the existence of attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358–59 (D.Mass.1950)). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability."[2] Jones, 696 F.2d at 1072.

The work product doctrine is governed under Rule 26(b)(3) of the Federal Rules of Civil Procedure. This Rule does not protect documents from discovery unless they are prepared in anticipation of litigation or reveal the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

In State ex rel. USF & G v. Canady, 194 W.Va. 431, 460 S.E.2d 677, 684–85 (1995), the Supreme Court of Appeals of West Virginia noted that "[a]s the attorney-client privilege and the work product exception may result in the exclusion of evidence which is otherwise relevant and material and are antagonistic to the notion of the fullest disclosure of the facts, courts are obligated to strictly limit the privilege and exception to the purpose for which they exist." Id. at 684. However, "[c]ourts must work to apply the privilege in ways that are predictable and certain" keeping in mind that "[t]he privilege forbidding the discovery of evidence relating to communications between an attorney and a client is intended to ensure that a client remains free from apprehension that consultations with a legal advisor will be disclosed." Id. at 684 (citations omitted).

To determine whether a document was prepared in anticipation of litigation, "the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation." State ex rel. United Hospital Center, Inc. v. Bedell, 199 W.Va. 316, 484 S.E.2d 199, 213 (1997). Consistent with the findings of the United States Court of Appeals

---

[2] See, also, State ex rel. USF & G v. Canady, 194 W.Va. 431, 460 S.E.2d 677, 684 (1995) (the claimant bears the burden of establishing the applicability of the attorney-client privilege or the work product exception).

for the Fourth Circuit in In re Grand Jury Proceedings, 33 F.3d 342, 348 (4th Cir. 1994), USF & G held that the work product protection is analyzed in two contexts: fact work product and opinion work product:

> Both are generally protected and can be discovered only in limited circumstances. Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship .... Opinion work product is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney.

USF & G, 460 S.E.2d at 691 (quoting In re Grand Jury Proceedings, 33 F.3d at 348).

Even though this matter does not involve litigation over insurance coverage or investigation, in State ex rel. Allstate Ins. Co. v. Gaughan, 203 W.Va. 358, 508 S.E.2d 75, 92 (W.Va. 1998), the West Virginia Supreme Court of Appeals provided guidance in analyzing work product issues, and determined that a case-by-case approach is

> more sound in determining whether documents in an insurance claim file were prepared in anticipation of litigation. The trial court should consider the nature of the requested documents, the reason the documents were prepared, the relationship between the preparer of the document and the party seeking its protection from discovery, the relationship between the litigating parties, and any other facts relevant to the issue.

(quoting Askew v. Hardman, 918 P.2d 469, 473–74 (Utah 1996)).

In support of his argument, Plaintiff cites Chambers v. Allstate Ins. Co., 206 F.R.D. 579 (S.D.W.Va. April 29, 2002) wherein this Court examined the attorney-client privilege and the work product doctrine being asserted to avoid production of confidential information. In Chambers, it was noted that voluntary disclosure of work product or attorney-client communications constituted waiver of the privilege as to all other communications on the same subject. See, State ex. Rel. McCormick v. Zakaib, 189 W.Va. 258, 261 (1993). The Fourth Circuit makes a clear distinction between opinion and non-opinion work product in the context of subject

matter waiver. There is subject matter waiver when a party discloses non-opinion work product to an adversary, but there is no subject matter waiver of opinion work product. In re Martin Marietta Corp., 856 F.2d 619, 623, 625–26 (4th Cir. 1988).

The Court is not unmindful that the activity which gave rise to the civil actions in both State and Federal court concerned foreclosure proceedings pursuant a trust deed. There is no dispute that the alleged privileged communications/work product concern the "foreclosure counsel" in reference to the foreclosure of Plaintiff's home. Further, there is no evidence that Defendant was pursuing foreclosure by way of judicial sale under W. Va. Code § 55-12-1, *et seq*. but was instead pursuing the more common and efficient method of foreclosure, the trustee sale which is governed by W. Va. Code § 38-1-3. There is no evidence that "foreclosure counsel" was acting as anything other than a trustee, and simply carrying out the duties described under W. Va. Code § 38-1-3 in order to effect the foreclosure of the realty securing Defendant's trust deed. Of interest here, is that the West Virginia Supreme Court of Appeals has found consistently, over the last one hundred and twenty plus years, that a trustee in a deed of trust has a 'fiduciary' duty to "look to the rights and interests of the trust-debtor, as well as to those of the trust-creditor, in-as-much as he is the agent of both parties, and bound to act impartially, between them." Syl. Pt. 7, Hartman v. Evans, 38 W. Va. 669, 18 S.E. 810 (1893); see also, Smith v. Lowther, 35 W. Va. 300, 308, 13 S.E. 999, 1001 (1891) ("It has been frequently held that the trustee in a deed of trust is the agent of both the grantor and the *cestui que trust*, and his duty requires him to act impartially between them. A confidence is reposed in him by both parties . . . ."); Lucas v. Fairbanks Capital Corp., 217 W. Va. 479, 484-485, 618 S.E.2d 488, 493-494 (2005).

**Plaintiff's Motion for *In Camera* Review of 117 Redactions from Discovery**

Despite having been permitted time during the recess of the hearing to meet and confer on these discovery disputes, the parties were unable to reach an agreement regarding Plaintiff's Motion (Document No. 27.) Nevertheless, counsel for both parties provided copies of documents for this Court's *in camera* review: Defendant provided two copies of the un-redacted information, one that is Bates stamped [enumerated as OLS-BP 0001 through OLS-BP 0137] and the other unstamped, Defendant's Privilege Log that identifies each enumerated "Privilege Log", including six separate documents that are listed as "Privilege Log #112 - #117". These documents concern the loan account of Wesley B. Wyatt, for real property located at 131 Yoke Court, Princeton, West Virginia 24740-7566. The dates provided in these documents span a period of time from February 2004 through August 2016. Plaintiff provided the Court copies of Bates stamped documents, from OLS-BP 0041 through OLS-BP 0071, which contain the previously un-redacted information and the current redacted information produced during the State proceeding and in the instant proceeding, respectively.

The Court notes that Defendant's Privilege Log indicates that Privilege Log #1 - #111 are "REDACTED" documents and "Privilege Log #112 - #117" are "NOT PRODUCED" documents. The "REDACTED" documents can best be described as a ledger-type entries that have several headings: "Loan Number"; "Comment Date"; "Comment Time"; "User Name"; "Comment Class"; "Stdcalias"[3]; and lastly, "Comment".

Pursuant to the Privilege Log, #1 – #50 concern OLS-BP 0041 through OLS-BP 0071. For each of those items, Defendant has asserted "attorney-client communication and/or attorney work product", and described each item as "entry/-ies for communication with outside counsel

---

[3] There is no indication in the documents what this heading means, however, various lettered codes have been listed under this heading.

regarding foreclosure"[4]. The Court further notes that Plaintiff is correct in his description that what was once produced un-redacted in the prior litigation has been reproduced in the instant litigation with additional redactions. Clearly, the information that was produced previously un-redacted and later produced redacted was the product of a voluntary disclosure to an adversary in the prior legal proceeding under the aforementioned legal authority, thereby vitiating the privilege now claimed by Defendant.

After a thorough review of each of the enumerated items, specifically items #1 – #48, the redacted information does not suggest or contain any privileged communication or work product, but mere recitation of what necessary documents and/or procedures are in order to effect a proper foreclosure proceeding, and has nothing to do with litigation. There is no indication that the redacted information contained an opinion, mental impression or legal theory authored by an attorney or representative, that would be entitled to protection under Rule 26. Moreover, several entries under the "User Name" described as "outside counsel" do not indicate a privileged communication, attorney work product, or even legal research in connection with the loan, for instance, in the prior State civil action, Defendant disclosed to Plaintiff Privilege Log #49, OLS-BP 0069:

> "9/28/12   8:47:00 AM   outside counsel   TIME   Spoke with: Event or Action Which Prompted Follow Up: Outcome or Update: Title update requested 9/5/12."

This same information was redacted during discovery in the instant proceeding. An additional line of text after "9/5/12" is "Cannot proceed until received and estate docs reviewed." The Court can only presume that this entry under the user name "outside counsel" indicated that one of Defendant's agents "spoke with outside counsel", otherwise known as the "foreclosure counsel"

---

[4] Item numbers 49 and 50, OLS-BP- 0071, are more specifically described as "entries for communication with outside counsel regarding foreclosure hold due to litigation".

because **each and every** one of the entries in the documents provided for this Court's *in camera* review pertain to nothing else but the foreclosure proceedings. Indeed, several entries under the "Comment" heading reference attorney names, email addresses and law firm names of foreclosure counsel, with no suggestion of any privileged communication or attorney work product. The Court notes that the **last entry** [Privilege Log #48; OLS-BP 0070] under user name "outside counsel" occurred before the State civil action was filed in February 2014, thereby giving more reason to suggest that the notation had nothing to do with a pending litigation, but only the foreclosure proceedings:

> 10/15/2012 9:08:51 AM   outside counsel   TIME   TODO   NOTICE OF SALE POSTED::Followed up with foreclosure councel [*sic*] for f/c status and/or event. Spoke with: Even or Action Which Prompted Follow Up: Outcome or Update: Title update received. In review. Need estate docs.

Further, there are **no** entries after October 15, 2012 that indicated that any agent of Defendant "spoke with" an "outside counsel".

For Privilege Log #51, Defendant asserted "attorney-client communication" and described same as "entry for communication with outside counsel regarding foreclosure".

For Privilege Log #56, Defendant asserted "attorney-client communication; attorney work product" and described same as "entry for communication with outside counsel regarding foreclosure".

For Privilege Log #52, #63, and #64, Defendant asserted "attorney-client communication; attorney work product" and described same as "entry for communication with outside counsel regarding foreclosure hold due to litigation".

For Privilege Log #53, #54, #55, #57-62, #65, #67-68, #70-77, #79-82, #85-102, #104, #106-110, Defendant asserted "attorney-client communication" and described same as "entry for communication with outside counsel regarding foreclosure hold due to litigation".

For Privilege Log #66, Defendant asserted "attorney-client communication" and described same as "entry for communication with outside counsel regarding status of foreclosure and litigation".

For Privilege Log #69, Defendant asserted "attorney-client communication" and described same as "entry for communication with outside counsel regarding litigation".

For Privilege Log #78, Defendant asserted "attorney-client communication" and described same as "entry for communication with outside counsel regarding collateral file".

For Privilege Log #83-84, Defendant asserted "attorney-client communication" and described same as "entry for communication with outside counsel regarding loan file".

For Privilege Log #103 and 105, Defendant asserted "attorney-client communication" and described same as "entry for communication with outside counsel regarding foreclosure".

For Privilege Log #111, Defendant asserted "attorney-client communications; attorney work product; prepared in anticipation of litigation" and described same as "entries for litigation notification; internal account updates".

The Court further notes that in relation to aforementioned asserted privileges, these redacted entries contained text or commentary that appear to be duplicated repeatedly under a variety of user names: "Chheda, Prachi Y"; "Sangoi, Swati S"; "Ishata Shah"; "Shital Dayal Malekar"; and "Prasad Suresh Bane".[5] Each of these entries span a period of time from November 2012 through November 2015, and bear no relation to a privileged communication or attorney work product. In fact, the remarkable characteristic of each of those entries indicated that the "file is on hold for litigation" with requests to the "litigation department" what documents are needed to "resolve the issue" so that "we can proceed with the further action." There is no indication that

---

[5] Due to the large number of entries and user names provided, the Court provides only a few names.

these text entries were drafted by attorneys or would otherwise be subject to the privileges sought by Defendant.

With regard to the six documents provided for *in camera* review, noted as Privilege Log #112 – #117, which were not Bates stamped and were "NOT PRODUCED" to Plaintiff, the Court notes the following:

For Privilege Log #112, Defendant asserted "attorney-client privilege" and described same as "foreclosure information report". It is apparent that this document was generated by "Altisource" as a title search for "Mancini & Assoc" with a "search effective date" of September 28, 2012. Interestingly, Mancini & Associates served as "foreclosure counsel" and is listed in the "Substitution of Trustee" that would have been recorded at the Mercer County Clerk's Office pursuant to statutory foreclosure procedures, a copy of which was also provided to the Court for *in camera* review and is the document provided as Privilege Log #117, for which Defendant asserted "attorney client privilege; attorney work product" and described same as "communication from outside foreclosure counsel".

For Privilege Log #113, Defendant "attorney-client privilege" and described same as "communication with outside counsel" and is a document from Defendant to "Requestor" Tamy St. John of Morris, Laing, Evans, Brock, & Kennedy, Chtd. which purports to return "ALL collateral files sent to your attention" to be returned to the "Vault" which included documents from the Mortgage Loan File: Note, Security Interest or Mortgage, and Mortgage/Security Instrument Assignment(s).

For Privilege #114, Defendant asserted "attorney-client privilege" and described same as "communication with outside counsel", which are the same documents indicated in Privilege Log #113, including the signed acknowledgment by an agent of Morris, Laing, Evans, Brock, &

Kennedy, Chtd., as "Attorney-Bailee" that the aforementioned mortgage documents were received.

For Privilege Log #115, Defendant asserted "attorney work product" and described same as "abstractor call back sheet prepared by outside counsel" which is a title report bearing at the top "Page 1 of 30", however, only this single page was provided to the Court. It is apparent from the face of this abstractor call back sheet that it is nothing more than the order for the title search provided for Altisource Solutions, Inc. with a notation that the search was current as of September 28, 2012.

For Privilege Log #116, Defendant asserted "attorney client privilege" and described same as "foreclosure report prepared for outside counsel" which includes: a foreclosure report "by Premium Title Services, INC." with an effective search date of May 18, 2011 and "prepared for Mancini & Assoc."; a duplicate copy of the foreclosure information report provided by Altisource provided as Privilege Log #112; duplicate documents that were provided as Privilege Logs #113 and #114 acknowledging the return of the mortgage documents to the Vault by the "Attorney-Bailee"; a duplicate copy of the abstractor call back sheet provided as Privilege Log #115; a duplicate copy of the foreclosure report "by Premium Title Services, INC." noted *supra*; a "certification of title" of the "title report completed under the supervision of Brian K. Carr, Attorney-At-Law" and on the reverse side of the document states "Wesley B. Wyatt; 553322396744; AT-08388; Date Received 08/19/2011; INV NO. 2365; AFFROWN" and includes the address and phone number for Mancini & Associates; and finally, a duplicate copy of the Substitution of Trustee provided as Privilege Log #117.

After a thorough review of each of the enumerated Privilege Logs, it is clear to this Court that none of this information contains any privileged communication or attorney work product, but concerns only the preparation for the foreclosure proceedings that gave rise to the litigation herein, and have absolutely nothing to do with the litigation that began in the Mercer County Circuit Court or in this Court. Additionally, there is no indication that the redacted information or even the withheld information contained an opinion, mental impression or legal theory, that would otherwise be entitled to protection under Rule 26. Indeed, because Defendant previously disclosed to Plaintiff information, legal precedent in this jurisdiction dictates that any alleged privilege (had there been one) was effectively waived, and that this waiver applies to other communications regarding the same subject matter, which in this case, are the foreclosure proceedings. See, Chambers v. Allstate Ins. Co. Furthermore, **none** of the documents provided to this Court was attorney-generated opinion work product, and barely rises to "non-opinion" work product envisioned by In re Martin Marietta Corp. that would have been disclosed under law (i.e. the Substitution of Trustee document) and concerned publicly known facts (i.e. debts, liens, chain of title, etc.) which were documented in the title searches conducted by agencies contracted by other parties in preparation for the foreclosure proceedings. Accordingly, with regard to Privilege Log #1 – #117, Plaintiff's *Motion to Compel* (Document No. 27.) is **GRANTED**, Defendant's *Motion for Protective Order* (Document No. 37.) is **DENIED** to the extent that it seeks prohibition of disclosure of the redacted and not produced materials sought by Plaintiff's *Motion to Compel*. The Clerk is requested to file the materials provided to this Court by the parties for the *in camera* review **under seal**.

While Defendant argued during the hearing that Plaintiff failed to meet and confer about this matter, and while Plaintiff argued that it attempted to communicate with Defendant via email

to resolve this dispute, the undersigned is of the opinion that any attempt to conduct a face-to-face meet and confer would have been frivolous at best. The disingenuous assertions of attorney-client privilege and attorney work-product to the 117 redactions belie any chance Defendant would have relinquished the assertion of privilege. Though counsel for Defendant agreed to forgo the assertion of privilege with regard to the first 50 redactions that were disclosed without assertion of privilege in the State civil action, she steadfastly refused to withdraw assertions of privilege regarding all remaining redactions even though they were of the same type of redactions that the undersigned has found to **not** be based upon good faith assertions of attorney-client communication and/or attorney work-product. The actions of Defendant amounted to no more than gamesmanship for gamesmanship sake. There is nothing in the redactions that any reasonable person would find that would suggest any of the redactions were of the type that litigants would in good faith argue amounted to attorney-client communication or work-product. Such gamesmanship must be discouraged so as to avoid the waste of valuable and limited judicial resources. Frankly, there is nothing even remotely close about these matters that are privileged as asserted by Defendant. On that basis, the undersigned agrees with Plaintiff that Defendant's redactions amounted to abuse of a sacrosanct privilege.[6]

Therefore, pursuant to Rule 37, Plaintiff is invited to file the appropriate motion for sanctions outlining the reasons sanctions are appropriate in this matter and including the time it took prosecute the *Motion to Compel*. Defendant shall be allowed to file an appropriate pleading

---

[6] Plaintiff's counsel argued that the privilege log was deficient and that a deficient privilege log entitles the Court to consider the privileges waived, however, the Court does not have to reach that issue as it is clear that the redactions are not privileged. While the undersigned agrees that the privilege log is deficient, there are other sanctions that the Court could issue short of the extreme sanction of waiver, but as stated above, the redactions are frivolous at best and therefore the undersigned does not reach the question of waiver due to an inadequate privilege log. Further, Plaintiff's counsel argued that waiver of the privilege, by disclosing the items in the State civil action, constituted waiver as to all other similar redactions, the undersigned does not have to reach that matter as well for the reasons already stated.

setting forth why this Court should not issue sanctions and any other objections to the accounting of time filed by Plaintiff.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive motion may be contested by filing, within 14 days, objections to this Order with District Judge Irene Berger. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is further requested to send a copy of this Order to counsel of record.

ENTER: November 17, 2016.

Omar J. Aboulhosn
United States Magistrate Judge