IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BILLY PUCKETT,

           Plaintiff,

v.                                    CIVIL ACTION NO.   5:16-cv-05909

OCWEN LOAN SERVICING, LLC,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Transfer Venue* (Document 32), *Defendant Ocwen Loan Servicing LLC's Memorandum in Support of Its Motion to Transfer Venue* (Document 33), *Plaintiff, Billy Puckett's Opposition to Defendant's Motion to Transfer Venue* (Document 47), and *Defendant Ocwen Loan Servicing, LLC's Reply in Support of Its Motion to Transfer Venue* (Document 49), as well as all attached exhibits.

In addition, the Court has reviewed *Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss Amended Complaint* (Document 15), *Defendant Ocwen Loan Servicing, LLC's Memorandum in Support of Its Motion to Dismiss Plaintiff's Amended Complaint* (Document 16), the *Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint* (Document 18), and the *Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint* (Document 19). The Court has also reviewed all attached exhibits, as well as the Plaintiff's *First Amended Complaint* (Document 12). After careful

consideration, for the reasons stated herein, the Court finds that the motion to transfer and the motion to dismiss should both be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Billy Puckett, initiated this suit in the Circuit Court of Raleigh County on June 1, 2016. He named Ocwen Loan Servicing as the Defendant. Ocwen removed the matter to this Court, citing diversity jurisdiction, on June 30, 2016. Mr. Puckett subsequently filed an amended complaint on July 21, 2016. He currently resides in Rock, Mercer County, West Virginia. Ocwen is a Delaware corporation with its principal place of business in Florida.

This litigation involves a parcel of real property consisting of approximately 0.87 acres, with a residence, located in Princeton, Mercer County, West Virginia. Mr. Puckett and his wife, April Puckett, entered into an agreement to purchase the property from Ms. Puckett's parents on August 1, 2008. The purchase price was $37,000, to be paid in monthly installments of $250, without interest. The seller had the right to terminate the agreement if the Pucketts failed to make a payment for more than ten days beyond its due date, and prior payments would be considered "liquidated damages and rent for the breach of this agreement." (Lease Purchase Agreement at 3, att'd as Ex. A to Def.'s Mot. to Dismiss.) Under the terms of the agreement, the buyers were responsible for property taxes, insurance, maintenance, and repairs. The agreement was recorded in the office of the clerk of the Mercer County Commission.

Mr. and Ms. Puckett, together with their four children, resided in a home on the property after entering into the purchase agreement. In February, 2011, an Ocwen employee called Mr. Puckett and asserted that Ocwen had a lien against the property with a first mortgage or deed of trust, requiring payments of $500 per month with 22 years remaining. Mr. Puckett denied the

2

existence of such a loan. The Ocwen employee said that if the payments were not made, Mr. Puckett and his family would be evicted in ninety (90) days, the locks would be changed, and any personal belongings in the house would be auctioned off.

As a result of the conversation, Mr. Puckett and his family made repairs to a mobile home in Spanishburg, West Virginia, and moved into it in May, 2011. Sometime between May and October, 2011, Ocwen agents entered the Princeton property, placed padlocks on the doors, and placed placards on the home "identifying themselves as agents of Ocwen who secured Mr. Puckett's home on behalf of Ocwen." (Am. Compl. at ¶ 11.) Ocwen maintained, controlled, and insured the home thereafter, and the padlocks and placards remained until January 5, 2016, when Ocwen's attorney provided the keys to the padlocks to Mr. Puckett's attorney. During Ocwen's period of possession, the property was damaged, and Ocwen made an insurance claim but did not repair the damage.

After the Pucketts left their home, Ms. Puckett retained counsel and learned that Ocwen did not have an enforceable lien, mortgage, or deed of trust against the property. Ocwen instead held a deed of trust against an adjacent parcel of property with a mobile home. Ocwen "threatened to file an action to 'reform' Ocwen's deed of trust on the adjoining property to establish a lien against Mr. Puckett's property" although "Ocwen had no lien of record against Mr. Puckett's property." (*Id.* at ¶ 15.) The Pucketts incurred economic expenses, as well as stress and anxiety, as a result of the move, which caused three children to transfer to new schools while the fourth lived with his grandmother temporarily to finish the school year. Mr. Puckett asserts causes of action for invasion of privacy, trespass, slander of title, intentional or reckless infliction of emotional distress, and conversion. He seeks compensatory and punitive damages.

3

Ocwen filed a motion to dismiss on July 7, 2016, shortly after removing this action to federal court. Mr. Puckett filed his first amended complaint on July 21, 2016, and Ocwen filed its motion to dismiss the amended complaint on August 4, 2016. On November 3, 2016, Ocwen filed its motion to transfer venue from the Beckley division to the Bluefield division of the District Court for the Southern District of West Virginia. Both motions are now fully briefed. The Court will first address the motion to transfer.

## MOTION TO TRANSFER

Ocwen requests that this matter be transferred to the Bluefield division under 28 U.S.C. § 1404(a), because the property in question is located within that division and the Plaintiff and his family live within that division. Ocwen argues that West Virginia law favors resolution of claims involving real property and/or property insurance within the county where the property is located. It further suggests that a jury view of the property may be appropriate in this case, and that it may be necessary for the parties to visit the property during discovery. Mr. Puckett opposes transfer, noting that venue is proper in the Beckley division, and that Ocwen admits that, as it is headquartered out of state, a transfer will not increase its convenience. He states that the Bluefield courthouse is about thirty-five miles closer for him and his witnesses than the Beckley courthouse, and contends that there is no appreciable difference in convenience for his witnesses or sources of proof. Both parties accuse one another of forum shopping.

Courts may transfer venue "for the convenience of parties and witnesses, in the interest of justice" when venue is proper in both the transferring district and in another district. 28 U.S.C. § 1404(a). The Fourth Circuit has established four factors for consideration in deciding motions to transfer under § 1404(a): "(1) the weight accorded to plaintiff's choice of venue; (2) witness

4

convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).[1] "As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Id.*; *see also Ashcraft v. Core Labs. LP*, No. 2:15-CV-03192, 2016 WL 1222154, at *3 (S.D.W. Va. Mar. 28, 2016) (Johnston, J.) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) statement that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

The Court finds no reason to disturb the Plaintiff's choice of venue in this case. The distance between the two divisions is minimal, limiting concerns regarding the convenience of either Mr. Puckett or any local witnesses. The Defendant does not suggest it has offices or witnesses for whom Bluefield is more convenient. A jury view of the property seems unlikely to be necessary, based on the allegations. A transfer of venue would have no impact on any visit to the property made by the parties and their attorneys and/or witnesses during discovery, as there is no reason such a visit would include a stop at the relevant courthouse. There is no dispute between the parties that venue is proper in either division, and state law venue preferences, to whatever extent they would counsel for the action to be located in a particular county in state court, have little bearing on appropriate venue in federal court. *Cf. Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66 (1953) (noting that 28 U.S.C. § 1441 provides that the proper venue for cases

---

1 Courts within the Southern District of West Virginia have often applied a seven-factor test, which largely overlaps the four-factor test adopted in *Plumbers & Pipefitters*: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice. *See, e.g.*, *AFA Enterprises, Inc. v. Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D.W. Va. 1994) (Haden, C.J.); *Conklin v. Nationwide Prop. & Cas. Ins. Co.*, No. 2:16-CV-08604, 2016 WL 5843618, at *2 (S.D.W. Va. Oct. 4, 2016) (Goodwin, J.)

removed from state court is the district court embracing the place where the action is pending, and § 1391, which otherwise governs proper federal venue, is not applicable to removed cases); *Smith v. JP Morgan Chase Bank, N.A.*, 727 F. Supp. 2d 476, 479 (S.D.W. Va. 2010) (Goodwin, J.). Thus, the Court finds that the Defendant's motion to transfer venue should be denied and will proceed to address the motion to dismiss.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual

inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Ocwen asserts that none of Mr. Puckett's claims are legally viable. It argues that placing padlocks and placards on the Plaintiff's home is not highly offensive to a reasonable person, particularly as the Plaintiff and his family had already vacated the premises. Ocwen argues that

7

the trespass claim must fail because the Plaintiff did not have legal title to the property under the Lease Purchase Agreement, and had vacated the property and therefore did not have physical possession. Likewise, Ocwen asserts that the Plaintiff's lack of legal title to the property defeats the claim for slander of title. Finally, Ocwen argues that the facts asserted do not support claims for either intentional infliction of emotional distress or conversion.

Mr. Puckett alleges that he and his family were forced to move by Ocwen's threats, and their home was then seized by Ocwen, which he asserts constitutes an unreasonable intrusion upon seclusion. In addition, he asserts that padlocking the home and placing placards indicating that Mr. Puckett had lost the home to the bank constitutes publicity that unreasonably placed him in a false light before the public, falling within the parameters of West Virginia law on invasion of privacy. Mr. Puckett further argues that he was the equitable owner of the property due to his contract to purchase it, and that he had physical possession at the time Ocwen threatened foreclosure and vacated only out of fear that Ocwen would change the locks and auction his family's belongings. For the same reasons, Mr. Puckett argues that his claim for slander of title should be permitted to proceed. He argues that Ocwen's threat to evict him and his family and auction his property, despite its lack of any legal interest in the property, followed by its conduct in padlocking the home, is sufficient to support a claim for intentional or reckless infliction of emotional distress. Finally, Mr. Puckett argues that he is entitled to any insurance proceeds Ocwen received for unrepaired damage to the home that occurred during the time Ocwen had taken possession and obtained insurance.

    *A. Invasion of Privacy*

The West Virginia Supreme Court has established the following categories of invasion of privacy: "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. Pt. 8, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 74 (W. Va. 1983); Syl. Pt. 6, *Tabata v. Charleston Area Med. Ctr., Inc.*, 759 S.E.2d 459, 461 (W. Va. 2014). The allegations here involve both an unreasonable intrusion upon seclusion and publicity that unreasonably places another in a false light before the public.

Courts in West Virginia have generally adopted the Restatement (Second) of Torts § 652B for claims of intrusion upon seclusion. *See, e.g.*, *Ghafourifar v. Cmty. Trust Bank, Inc.*, No. 3:14-CV-01501, 2014 WL 4809782, at *14 (S.D.W. Va. Aug. 27, 2014) (Eifert, M.J.) *report and recommendation adopted*, No. 3:14-CV-01501, 2014 WL 4809794 (S.D.W. Va. Sept. 26, 2014); *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 508 (S.D.W. Va. 2014) (Faber, J.); *Harbolt v. Steel of W. Virginia, Inc.*, 640 F. Supp. 2d 803, 817 (S.D.W. Va. 2009) (Chambers, J.). The Restatement provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977).

A false light invasion of privacy claim is defined as "publicity which unreasonably places another in a false light before the public." Syl. Pt. 12, *Crump*, 320 S.E.2d at 74. "A plaintiff in a false light invasion of privacy action may not recover unless the false light in which he was placed would be highly offensive to a reasonable person." *Id.* at 74, Syl. Pt. 14. Further,

"widespread publicity…is an essential ingredient to any false light invasion of privacy claim." *Id.* at 87-88; *see also Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 887–88 (S.D.W. Va. 2014).

The Court finds that the facts alleged support a claim for either type of invasion of privacy. Mr. Puckett and his family were enjoying the seclusion of their home when Ocwen threatened to evict them and auction off their belongings. They left, and were unable to return for a period of over four years, because Ocwen agents had placed padlocks on the Pucketts' home. Throughout that period, Ocwen agents continued to intrude into the Pucketts' private affairs and concerns by wrongfully asserting an interest in their property. Under the relatively broad definition established by the Restatement, the Court finds that the facts alleged could support a claim for intrusion upon seclusion.

In addition, the posting of placards indicating that Ocwen had taken over the property, despite Ocwen's lack of legal interest in the property and Mr. Puckett having met all of his obligations as the purchaser of the property, placed the Pucketts in a false light before the public. The false implication that the family lost their property through financial difficulty or irresponsibility could be highly offensive to a reasonable person. Though it may ultimately be difficult for the Plaintiff to establish that the placards constitute sufficiently widespread publicity, at this stage, the Court finds that the factual allegations are sufficient.

Ocwen, however, argues that the claim for false light invasion of privacy is not properly pled because the first amended complaint specifically mentions intrusion upon seclusion, but not false light. The Court finds the first amended complaint meets the applicable pleading standard. The factual allegations, as noted, are sufficient. Count One is entitled "invasion of privacy;" one

paragraph within that count states that "Mr. Puckett had the right at common law to enjoy and prosper peaceably in his home and otherwise be free from intrusion upon his seclusion." (Am. Compl. at ¶ 20.) The next paragraph reads: "The Defendant Ocwen, by its acts aforesaid, invaded, abridged, and otherwise interfered with and violated Mr. Puckett's right of privacy." (*Id.* at ¶ 21.) Plaintiffs are not required to enumerate their legal theories in detail within their complaint. Thus, the Defendant's motion to dismiss Count One should be denied.

### B. Trespass

The West Virginia Supreme Court of Appeals has defined trespass as "an entry on another man's land without lawful authority, and doing some damage, however inconsiderable, to his real property." *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945); *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 386 (4th Cir. 2013). Leaving "a structure, chattel, or other thing" on land belonging to another constitutes a continuing trespass. *Whiteman*, 729 F.3d at 386 (internal quotation marks omitted).

Mr. Puckett has alleged that he and his wife were purchasing the property from his wife's parents, pursuant to a document entitled "Lease Purchase Agreement." The terms of the agreement provided for payments of $250 per month until the purchase price of $37,000 was met, although early payment was permitted. The Pucketts were responsible for property taxes, insurance, and maintenance of the property, and the sellers did not have the right to cancel the contract or choose not to sell, provided the Pucketts met their obligations under the contract. Upon payment of the purchase price, either early or through the $250 monthly installments, the seller was to convey the property by deed of general warranty. According to the complaint, the Puckett family occupied the home until Ocwen threatened to evict them, and moved only because

11

of Ocwen's actions. Mr. Puckett has also asserted that Ocwen had no legal interest in the property, and apparently mistook his property for an adjoining parcel of land with a mobile home, on which Ocwen held a deed of trust. Mr. Puckett has sufficiently alleged both a legal and possessory interest in the property. The allegations are also sufficient as to Ocwen's lack of legal authority to enter the property and place locks and placards on the home. Accordingly, Ocwen's motion to dismiss Count Two should be denied.

### C. Slander of Title

West Virginia courts recognize a cause of action for slander of title. The elements are as follows: "1. publication of; 2. a false statement; 3. derogatory to plaintiff's title; 4. with malice; 5. causing special damages; 6. as a result of diminished value in the eyes of third parties." *TXO Prod. Corp. v. All. Res. Corp.*, 419 S.E.2d 870, 873 (W.Va. 1992). Ocwen's motion to dismiss rests on its assertion that the Plaintiff did not have title to the property, based on its reading of *First Huntington Nat. Bank v. Gideon-Broh Realty Co.*, 79 S.E.2d 675 (W. Va. 1953).

The Court has previously outlined the terms of the Pucketts' Lease Purchase Agreement. In *Gideon-Broh*, the West Virginia Supreme Court noted that "[t]he line of discrimination between a lease and a sale is sometimes indistinct, and each case must, in a great measure, depend upon its own peculiar circumstances." *Id.* at 679. Though the court found that the contract in that case was a lease with an option to purchase, its finding was based on the specific language of the contract, wherein the payments were described as "rent," the property owners were referred to as "lessors," and there was a set term of twenty-eight years, at the end of which the lessees were entitled to purchase the property for one dollar. *Id.* at 680–81. Here, the language used in the agreement is more akin to an owner financed sale, with the parties referred to as "buyers" and

12

"sellers," and a specific sale price that the buyers could pay in full at any point. Thus, the Court finds that the Plaintiff has adequately alleged that he held equitable title to the property. Ocwen additionally challenges the Plaintiff's allegations regarding special damages or a diminution in the value of the property. The Court finds that the Plaintiff's complaint is sufficient, given the allegations regarding physical damage to the property while Ocwen held possession and insurance, as well as the Plaintiff's other asserted damages. In addition, the Plaintiff alleged that placards were placed on the property stating that Ocwen agents had secured the property. It may therefore be inferred that third parties were given the impression that the property was in foreclosure, which could tend to reduce the value of a property. Therefore, Ocwen's motion to dismiss must be denied as to Count Three.

### D. Intentional or Reckless Infliction of Emotional Distress

The West Virginia Supreme Court has established the following elements for IIED claims:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008).

Mr. Puckett has pled that, despite having no legal interest in his property, Ocwen threatened to evict his family and auction their belongings, and proceeded to maintain control and possession over the property in excess of four years. The Pucketts repaired another property and moved, causing their children to change schools or live with relatives to finish the school year. Ocwen

13

actually held a lien, in the form of a deed of trust, against an adjoining parcel of property. Nonetheless, Ocwen threatened to take legal action to reform the deed of trust on the adjoining property to include Mr. Puckett's property—which suggests that Ocwen was aware that it did not, at that time, have any legal interest in Mr. Puckett's property.  Mr. Puckett has asserted that his family was uprooted and his marriage was strained by the Defendant's actions, which suggests severe emotional distress.  Further, the ordeal began in February, 2011, and Ocwen handed the keys to its padlocks over to Mr. Puckett's attorney only in January, 2016.  Whether or not the initial error in foreclosing on the wrong home could support an intentional infliction of emotional distress claim, taking nearly five years to correct the error drastically increases both the atrociousness of the Defendant's conduct and the distress inflicted on the Plaintiff.  The Court finds that the facts alleged, if proven, could support a jury finding that Ocwen's conduct was sufficiently atrocious and outrageous, that Ocwen either intended to cause emotional distress or acted recklessly in doing so, that Mr. Puckett did suffer emotional distress, and that that distress was so severe no reasonable person could be expected to endure it.

### E. Conversion

Conversion has been defined by the West Virginia Supreme Court of Appeals as follows:

> Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use.  And when such conversion is proved the plaintiff is entitled to recover irrespective of good or bad faith, care or negligence, knowledge or ignorance.

Syl. Pt. 17, *Rodgers v. Rodgers*, 399 S.E.2d 664, 668 (W. Va. 1990) (quoting Syl. Pt. 3, *Pine & Cypress Mfg. Co. v. American Eng'g & Constr. Co.,* 125 S.E. 375 (W. Va. 1924)).  Mr. Puckett alleges that Ocwen collected insurance proceeds for damage to his home during its period of

14

possession, did not use the same to repair the damage and retained the insurance proceeds for Ocwen's own purposes. That assertion is sufficient to state a claim for conversion at this stage of the litigation.[2]

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Transfer Venue* (Document 32) be **DENIED**, and that *Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss Amended Complaint* (Document 15) be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

        ENTER:    December 20, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[2] The Court notes that subsequent briefing on the motion to transfer suggests that Ocwen may not have received any insurance proceeds. The Court presumes that the Plaintiff will dismiss any cause of action he finds to be unsupported by the facts.